## J. SLAUGHTER *v.* THE STATE.

1. ALTERING CATTLE-BRANDS. — If, with fraudulent intent, the defendant altered the brand on an animal, the property of some other person, into a different brand, the statutory offence of fraudulently altering a brand is complete, no matter what the instrument or means by which the alteration was effected.

2. SAME. — To constitute an alteration of a brand, it is not necessary that the original scar has been changed; the alteration may, as in the present case, be done by so clipping the hair on the original brand as to change it into another one.

3. PRACTICE. — When the evidence tends to establish opposite conclusions, it is for the jury to find their verdict on that which they deem most credible; and if the judge who tried the cause has refused to set aside the verdict found on such evidence, the conviction will not be disturbed on appeal.

4. EVIDENCE OF INTENT. — Note in the opinion facts in proof deemed ample to show that the brand was altered with a fraudulent intent.

APPEAL from the District Court of Burnet. Tried below before the Hon. W. A. BLACKBURN.

It was in proof that the animal was regarded as an estray and the owner as unknown, in the neighborhood where it was taken by the appellant, who clipped the hair on the brand upon it so as to give the brand quite a different appearance. Other facts of significance appear in the opinion of the court. The punishment assessed was two years in the penitentiary.

*Makemson & Fisher*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, P. J. . Appellant was indicted under art. 2412, Pasc. Dig. (Rev. Stats., Cr. Code, art. 760), for fraudulently altering the brand of a yearling, the property of some person to the grand jurors unknown. The indictment was a good one. *Haws* v. *The State*, 41 Texas, 161; *Culberson* v. *The State*, 2 Texas Ct. App. 324.

The evidence showed the alteration to have been made by clipping some of the hair from the brand of the animal, whereby it was changed. This, it is contended, was not such an alteration as the law contemplates. It is insisted that nothing short of the alteration of the *scar* made originally by the branding-iron is an alteration of the brand. Upon this subject the court charged the jury that, " by altering a brand is meant that the brand on the animal is changed into a different brand." And again : " If a brand is changed or altered, it makes no difference in law by what instrument such change is made." This charge was correct. The questions are, was the act done with a fraudulent intent? and has the brand been changed or altered from what it was to another and different brand? *Linney* v. *The State*, 6 Texas, 1. If so, it matters not by what means the alteration was effected, the offence is complete. The charge of the court was full, and as favorable to the defendant as the facts warranted, and embodied in substance the special instruction asked for defendant.

With regard to the evidence, whilst it might be admitted, if necessary, for the sake of argument, that it was conflicting, still, under the well-established rules in such cases, the appellant would not be entitled to a reversal. These rules are, that " when the evidence on the trial of a criminal case tends to establish different and opposite conclusions, it is for the jury to find their verdict upon the evidence which in their judgment is entitled to the most credit ; and if the judge who has tried the cause has refused to set aside the verdict of guilty found on such evidence, the conviction will not be disturbed in this court." *Williams* v. *The State*, 41 Texas, 209.

But let us see what the evidence for the defence was. In the first place, he told the witness Crockett that he had bought the animal of one H. F. Brantley. But the mark and brand do not correspond with Brantley's, and the alteration of the brand is made to fit the recorded brand of Brantley. If a doubt could have arisen as to whether the brand was Brantley's as is pretended, how about the mark, about which there could be and was no controversy? Such a difference as is here exhibited in the marks was too marked to have misled, and, with a party honest and acting in good faith, should have solved the doubt as to the brand against the ownership and claim of Brantley. On the trial this pretended purchase from Brantley is changed into authority to use Brantley's cattle, by virtue of a power of attorney executed by Brantley to one F. M. Slaughter. How defendant acquired a right to avail himself of a power of attorney executed to F. M. Slaughter is not shown, nor is any connection of any sort established between defendant and F. M. Slaughter.

The witness Beck says that the animal had been running with his cattle. Defendant came to his house and asked him if he (witness) owned or claimed the animal. Witness told him he did not. Defendant then said, "Well, it is a sleeper, and I'll get away with it." If he had bought it of Brantley, or if he was authorized by power of attorney from Brantley to take and use it, it being Brantley's, why does he ask Beck if he claims it? and why, when Beck informs him that he does not, does he recognize and pronounce it "a sleeper," and declare his intention to get away with it? These facts are too glaring, too inconsistent with honesty of purpose, to deceive or for a moment mislead an honest jury seeking to ascertain guilt beyond the possibility of a reasonable doubt.

The evidence was amply sufficient to authorize the verdict. In fact, no error appears to have been committed on the trial, and the judgment is therefore affirmed.

*Affirmed.*